UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| LITTLE WOUND SCHOOL,<br><br>                Plaintiff,<br><br>  vs.<br><br>AMERICAN UNITED LIFE INSURANCE COMPANY,<br><br>                Defendant. | CIV. 17-5017-JLV<br><br>ORDER |

Plaintiff Little Wound School filed an action against defendant American United Life Insurance Company in South Dakota state court. (Docket 1-2). Defendant removed the case to this court and filed a motion to dismiss the complaint. (Dockets 1 & 4). According to defendant, the Employee Retirement Income Security Act ("ERISA") preempts plaintiff's claims and Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal of the complaint for failure to state a claim. (Docket 5); see Fed. R. Civ. P. 12(b)(6).

## LEGAL STANDARD

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Two "working principles" underlie Rule 12(b)(6) analysis. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" in the complaint. See id. "[A] complaint must allege 'more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Torti v. Hoag, 868 F.3d 666, 671 (8th Cir. 2017) (quoting Twombly, 550 U.S. at 555). The court does, however, "take the plaintiff's factual allegations as true." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 678 (citation omitted). The complaint is analyzed "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden, 588 F.3d at 594.

**FACTS**

Plaintiff is an educational facility charted by the Oglala Sioux Tribe, and its grades range from kindergarten to twelfth grade. (Docket 1-2 at p. 2). In 2010, plaintiff entered into an agreement with defendant on a 401(k) plan for plaintiff's employees. Id. at p. 3. The 2010 plan (also referred to as "the plan") marked a transition from the benefits plaintiff provided its employees in the 1990s. Id.

After relying on correspondence with defendant about the plan's contents, plaintiff formed mistaken beliefs on how the plan would operate, including "the exclusion of certain classifications of employees[.]" Id. Plaintiff asserts part the '90s plan included "employees designat[ing] a specific dollar amount to be contributed to the Plan[,]" so the 2010 plan's "exclusion of certain classes of employees would have had the same effect as excluding specific types of compensation because contract employees receiving the other

2

types of compensation were deferring stated dollar amounts." Id. at pp. 3-4.

"[O]perational failure" followed, as plaintiff alleges:

> The operational failure is the failure to include certain compensation in the calculation of plan participant elective deferrals, resulting in missed elective deferrals, employer matching contributions and earnings. This operational failure resulted from a discrepancy between the Plan document's language and the intent of Little Wound and the communications to participants as to the definition of "compensation" and the scope of participant earnings that were subject to the right [to] defer earnings into the Plan.

Id. at p. 4.

According to plaintiff, defendant made false representations. Specifically, that defendant "could efficiently sponsor and design" the plan; "that it was fully familiar with efficiently running these types of plans and could responsibly handle all functions necessary to establish a successful and fiscally responsible plan[;]" "that it was familiar with the scope of benefits that should be provided" to plaintiff's employees; and "that the Plan would be appropriately designed to ensure the best interests" of plaintiff's employees. Id.

Plaintiff enlisted the help of the Employee Plans Compliance Resolution System, which uses the Voluntary Compliance Program ("VCP") in these situations. Id. Plaintiff made a "corrective contribution" to the plan totaling $137,935.33 based on employees' missed deferral opportunities. Id. at p. 5. Plaintiff incurred a fee through the VCP and attorney fees by addressing the plan's problems. Id.

The complaint advances three claims: fraud, negligent misrepresentation and negligence. Id. at pp. 5-9. They largely relate to the "false representations"

3

set forth above. See supra at p. 3; (Docket 1-2 at pp. 5-9). Plaintiff seeks damages based on its corrective contribution, VCP fee, attorney fees and punitive damages. (Docket 1-2 at pp. 10-11).

## DISCUSSION

Defendant argues ERISA preempts plaintiff's claims. (Docket 4). "ERISA . . . is a comprehensive statute that sets certain uniform standards and requirements for employee benefit plans." Minnesota Chapter of Associated Builders & Contractors, Inc. v. Minnesota Dep't of Pub. Safety, 267 F.3d 807, 810 (8th Cir. 2001) (internal quotation marks omitted). "Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." Massachusetts v. Morash, 490 U.S. 107, 115 (1989) (internal citation and footnote omitted). Plaintiff does not dispute the 401(k) plan at issue in this case is an ERISA plan. (Docket 17 at p.1); see Johnston v. Paul Revere Life Ins. Co., 241 F.3d 623, 629 (8th Cir. 2001) ("As a preliminary matter, we must determine if the . . . policy at issue was a plan within the meaning of ERISA because the existence of a plan is a prerequisite to the jurisdiction of ERISA.") (internal quotation marks omitted).

ERISA includes a provision on preemption. 29 U.S.C. § 1144(a). The provision reads:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.

Id. "The ERISA civil enforcement mechanism" found in § 502(a)[1] has "such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Aetna Health, Inc. v. Davila, 542 U.S. 200, 209 (2004) (internal quotation marks omitted). Accordingly, the Davila Court stated "causes of action within the scope of the civil enforcement provisions of § 502(a) are removable to federal court." Id. (internal quotation marks omitted).

Defendant removed this case from state court, but the preemption issue here arises in the context of defendant's Rule 12(b)(6) motion to dismiss. (Docket 5). Defendant asserts preemption mandates dismissal of plaintiff's claims. Id. At the beginning of its argument, defendant contends the doctrine of "complete preemption" supports dismissing the complaint. Id. at pp. 3-4. This is misplaced. Despite its name, complete preemption is a jurisdictional rule that "any claim filed by a plan participant for the same relief provided under ERISA's civil enforcement provision, even a claim purportedly raising

---

[1] Under § 502(a)(1)(B), "[i]f a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits. A participant or beneficiary can also bring suit generically to 'enforce his rights' under the plan, or to clarify any of his rights to future benefits." Davila, 542 U.S. at 210 (quoting 29 U.S.C. § 1132(a)(1)(B), also referred to as § 502(a)(1)(B)).

5

only a state-law cause of action, arises under federal law and is removable to federal court." Prudential Ins. Co. of Am. v. Nat'l Park Medical Ctr., Inc., 413 F.3d 897, 907 (8th Cir. 2005). The rule applies when a plaintiff challenges a defendant's removal from state to federal court. "[A]lthough complete preemption . . . can be used to invoke federal question jurisdiction, Defendants cannot use [it] as a ground for dismissing Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6)." Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc., Case No. 17-CV-03871, 2017 WL 4517111, at *13 (N.D. Cal. Oct. 10, 2017); see Clark v. Ameritas Inv. Corp., 408 F. Supp. 2d 819, 826 (D. Neb. 2005) ("[C]omplete preemption has jurisdictional consequences that distinguish it from preemption asserted only as a defense."); BH Servs. Inc. v. FCE Benefit Admins. Inc., 5:16-CV-05045, 2017 WL 4325786, at *6-7 (D.S.D. Sept. 27, 2017) (explaining the jurisdictional nature of complete preemption).

The question in this case is whether plaintiff's state law causes of action "relate to" an employee benefit plan within the meaning of § 1144(a). In analyzing the meaning of "relate to," the United States Court of Appeals for the Eighth Circuit held "any claim that [1] has a connection with or [2] references an ERISA plan is preempted by ERISA." Ibson v. United Healthcare Servs., Inc., 877 F.3d 384, 391 (8th Cir. 2017) (internal quotation marks and some alterations omitted). These are two distinct inquiries.

Under the "reference" test, ERISA preempts a state law "when that law (1) imposes requirements by reference to ERISA covered programs[,] (2) specifically exempts ERISA plans from an otherwise generally applicable

6

statute[,] or (3) premises a cause of action on the existence of an ERISA plan[.]" Prudential Ins. Co. of Am. v. Nat'l Park Medical Ctr., Inc., 154 F.3d 812, 822 (8th Cir. 1998) (internal citations, alterations and quotation marks omitted). In a more recent decision, the Eighth Circuit held: "We have also stated a claim relates to an ERISA plan when it 'premises a cause of action on the existence of an ERISA plan.'" Estes v. Federal Express Corp., 417 F.3d 870, 872 (8th Cir. 2005) (quoting Prudential, 154 F.3d at 822).[2]

Plaintiff's state common law claims involve no impermissible "reference to" ERISA plans because they do not "act[ ] immediately and exclusively upon ERISA plans[, and] the existence of ERISA plans is [not] essential to the law's operation[.]" California Div. of Labor Standards Enf't v. Dillingham Const., N.A., Inc., 519 U.S. 316, 325 (1997). Instead, plaintiff relies on state laws "of general application" that "do[ ] not actually or implicitly refer to ERISA plans." Wilson v. Zoellner, 114 F.3d 713, 717 (8th Cir. 1997) (discussing the Missouri common law claim of negligent misrepresentation). The elements of plaintiff's fraud, negligent misrepresentation and negligence claims make "no reference to and function[ ] irrespective of the existence of an ERISA plan." Id. (internal quotation marks omitted); see also Johnson v. Weber, 898 N.W.2d 718, 729 (S.D. 2017) (stating the elements of fraud); Total Auctions & Real Estate, LLC v. S.D. Dept. of Revenue & Regulation, 888 N.W.2d 577, 581 n.4 (S.D. 2016)

---

[2]It is important to highlight that the portion of Prudential that Estes quotes is within a discussion of the "reference" test and not the "connection" test. See Prudential, 154 F.3d at 822 (titling the section of analysis "2. 'Reference to' ERISA in the Arkansas PPA").

(negligent misrepresentation); State Auto Ins. Cos. v. B.N.C., 702 N.W.2d 379, 386 (S.D. 2005) (negligence).

The central issue is whether ERISA preempts plaintiff's claims based on their "connection" to the plan. When conducting this inquiry, the United States Supreme Court considers "the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, and the nature of the effect of the state law on ERISA plans[.]" Gobeille v. Liberty Mut. Ins. Co., 136 S. Ct. 936, 943 (2016) (internal citation and quotation marks omitted). "A State law has an impermissible connection with ERISA plans where it governs . . . a central matter of plan administration or interferes with nationally uniform plan administration." Pharm. Care Mgmt. Assoc. v. Gerhart, 852 F.3d 722, 730 (8th Cir. 2017) (internal quotation marks omitted). Plan administration includes "determining the eligibility of claimants, calculation benefit levels, making disbursements, monitoring the availability of funds for benefit payments, and keeping appropriate records in order to comply with applicable reporting requirements." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 9 (1987). Because the "most efficient way to meet these responsibilities is to establish a uniform administrative scheme," id., "[w]here a State's law creates the prospect that a plan's administrative scheme will be subject to conflicting requirements, ERISA's preemption provision is enforced." Gerhart, 852 F.3d at 730.

The Eighth Circuit " 'relie[s] on a variety of factors to determine' whether a 'state [law] of general application' . . . is preempted because it 'relates to' an

8

ERISA plan." Munro-Kienstra v. Carpenters' Health & Welfare Trust Fund of St. Louis, 790 F.3d 799, 803 (8th Cir. 2015) (quoting Ark. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.,[3] 947 F.2d 1341, 1344 (8th Cir. 1991)). The St. Mary's court established seven factors:

1. Whether the state law negates an ERISA plan provision;
2. Whether the state law affects relations between primary ERISA entities;
3. Whether the state law impacts the structure of ERISA plans;
4. Whether the state law impacts the administration of ERISA plans;
5. Whether the state law has an economic impact on ERISA plans;
6. Whether preemption of the state law is consistent with other ERISA provisions; and
7. Whether the state law is an exercise of traditional state power.

St. Mary's, 947 F.2d at 1344-45; see Munro-Kienstra, 790 F.3d at 803-04 (applying the St. Mary's factors); BH Servs., 2017 WL 4325786, at *8-12 (same). The court addresses each factor in turn.

One: negate a provision

The parties failed to include the plan as part of the record. Plaintiff's complaint references it repeatedly, as do the motions regarding dismissal. (Dockets 1-2, 5, 16 & 17). Without the plan available to examine, the court finds it is unable to weigh this factor. See BH Servs., 2017 WL 4325786, at *8 (analyzing specific plan provisions).

---

[3]The court refers to this case as St. Mary's.

<u>Two and three</u>: affect relations and impact structure

The Eighth Circuit "treat[s] the second and third preemption factors as identical." In Home Health, Inc. v. Prudential Ins. Co. of Am., 101 F.3d 600, 605 (8th Cir. 1996). "Primary ERISA entities are 'the employer, the plan, the plan fiduciaries, and the beneficiaries.'" Thrailkill v. Amsted Indus. Inc., 102 F. Supp. 2d 1129, 1134 (W.D. Mo. 2000) (quoting St. Mary's, 947 F.2d at 1346). Plaintiff is the employer and defendant is the fiduciary. (Docket 16 at p. 9) (conceding this point in plaintiff's response brief); (Docket 1-2). This case—and recovery plaintiff may receive—affects relations between primary ERISA entities. See St. Mary's, 947 F.2d at 1346. Consequently, plaintiff's claims also impact the plan's structure. Throughout plaintiff's three causes of action, it targets defendant's alleged failure to disclose certain information regarding the plan and to carry out specific procedures with the plan. (Docket 1-2 at pp. 5-9). Plaintiff's recovery on its claims would cause a "change in plan structure and in the relationship between primary ERISA entities [that] is not a 'tenuous' impact on the plan." St. Mary's, 947 F.2d at 1346. Factors two and three weigh in favor of preemption. See id.; BH Servs., 2017 WL 4325786, at *8-9.

<u>Four</u>: impact administration

This factor supported preemption in Shea v. Esensten, 107 F.3d 625, 627 (8th Cir. 1997). The Eighth Circuit held: "The outcome of Mrs. Shea's lawsuit would clearly affect how Seagate's ERISA-regulated benefit plan is administered, and if similar cases are brought in state courts across the

10

country, ERISA plan administrators will inevitably be forced to tailor their plan disclosures to meet each state's unique requirements." Accordingly, the Shea court found that "result would be at odds with Congress's intent to ensure 'the nationally uniform administration of employee benefit plans.'" Id. (quoting New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657 (1995)); see Munro-Kienstra, 790 F.3d at 803 (finding an "impact [on] the administration of ERISA plans" based on the risk of creating non-uniform standards across the country). Plaintiff relies on Wilson, 114 F.3d at 719, to argue this factor cuts against preemption. The court finds this case is closer to Shea and Munro-Kienstra than Wilson.

Plaintiff's lawsuit argues defendant failed to make sufficient disclosures and execute certain plan procedures. As in Shea, the result in this case "would clearly affect how [an] ERISA-regulated benefit plan is administered[.]" Shea, 107 F.3d at 627. Allowing plaintiff's state law claims to proceed may impose additional disclosure requirements on defendant, "and if similar cases are brought in state courts across the country, ERISA plan administrators will inevitably be forced to tailor their plan disclosures to meet each state's unique requirements." Id.

Turning to plaintiff's argument on Wilson, that case involved a misrepresentation claim against an insurance salesman. Wilson, 114 F.3d at 719. The plaintiff suffered an injury on the job, was denied coverage, lost a claim against the insurance company and asserted the salesmen misled him

11

about coverage.  Id.  The Eighth Circuit determined recovery based on the salesman's "pre-plan tortious conduct" did not impact plan administration.  Id.

Plaintiff's allegations in this case focus on defendant's conduct surrounding the formation of the plan and the subsequent plan implementation.  (Docket 1-2 at pp. 4-9).  Because of this alleged misconduct, plaintiff pursues damages based on the benefits it believed its employees would receive under the plan.  Id.  In Shea, "Medica administered Seagate's employee benefit plan, and Mrs. Shea maintain[ed] Medica wrongfully failed to disclose a major limitation on her husband's health care benefits."  Shea, 107 F.3d at 627.  On that point, the Eighth Circuit stated, "we have held that claims of misconduct against the administrator of an employer's health plan fall comfortably within ERISA's broad preemption provision."  Id.  Plaintiff is correct that part of its claims touch pre-plan conduct.  (Docket 1-2 at p. 4) (alleging false representations made before administering the plan).  But a proper view of the complaint that appreciates its context reveals its claims encompass pre-plan conduct, actions during plan formation and the following administration of the plan.

Unlike the purely "pre-plan tortious conduct" in Wilson, 114 F.3d at 719, the scheme of actions set out in the complaint parallels those that "fall comfortably within ERISA's broad preemption provision."  Shea, 107 F.3d at 627; see Keokuk Area Hosp., Inc. v. Two Rivers ins. Co., 228 F. Supp. 3d 892, 897-98 (S.D. Iowa 2017) (finding preemption and holding that "[a]lthough the Hospital is not suing to recover improperly withheld benefits, its suit

12

nonetheless concerns an alleged failure to properly administer the Plan."); Estate of Disabato v. Nat'l Automatic Sprinkler Indust. Welfare Fund, No. 4:15-CV-828, 2016 WL 1182637, at *2-3 (E.D. Mo. Mar. 28, 2016).  This factor weighs in favor of preemption.

Five and six:  economic impact and consistency

"In situations . . . where the requested relief under state law would require defendants to repay the Plan, the Eighth Circuit has concluded that the fifth factor is implicated and weighs in favor of preemption."  BH Servs., 2017 WL 4325786, at *10.  But a "tenuous, remote, and peripheral economic impact on ERISA plans" does not support preemption of state law.  St. Mary's, 947 F.2d at 1348 (internal quotation marks omitted).

The parties offer little to no specific argument on this factor.  Because the record and parties' briefing sheds no light on the economic impact of plaintiff's state law claims regarding the plan, this factor does not weigh in favor of preemption.

"[W]here no portion of ERISA is consistent or inconsistent with the state law at issue, the sixth factor is not implicated."  BH Servs., 2017 WL 4325786, at *10 (citing Wilson, 114 F.3d at 719).  Like the fifth factor, analysis of the sixth factor is absent from the parties' submissions.  The sixth factor is neutral on preemption.

Seven:  traditional state power

"[T]his factor arguably is a policy consideration useful in deciding borderline questions of ERISA preemption."  St. Mary's, 947 F.2d at 1350.  The

13

analysis above establishes that this is not a borderline case and the factors generally weigh in favor of preemption. "Since this case does not present a borderline ERISA preemption question, it is not necessary to discuss policy considerations in this context." Boyle v. Anderson, 68 F.3d 1093, 1110, n.7 (8th Cir. 1995).

After analyzing the St. Mary's factors, the court finds ERISA preempts plaintiff's state law causes of action. Plaintiff's claims "relate to" the plan in this case, 29 U.S.C. § 1144(a), because they have "a connection with" an ERISA plan. Ibson, 877 F.3d at 391.

**ORDER**

Based on the above analysis, it is

ORDERED that defendant's motion to dismiss (Docket 4) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1-2) is dismissed without prejudice.[4]

Dated March 5, 2018.

                              BY THE COURT:

                              /s/ *Jeffrey L. Viken*
                              JEFFREY L. VIKEN
                              CHIEF JUDGE

---

[4] "Because it is unclear how Plaintiff's complaint would be amended to state a claim for relief under ERISA, the Court will grant Defendants' motion to dismiss and dismiss this action *without* prejudice." Disabato, 2016 WL 1182637, at *3 (emphasis added).